**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANTHONY J. CUTI, <br><br> *Plaintiff*, <br><br> v. <br><br> MERRICK GARLAND, in his official capacity as Attorney General of the United States *et al.*,[1] <br><br> *Defendants.* | Civil Action No. 19-3455 (RDM) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Anthony J. Cuti was convicted in 2010 of securities fraud, conspiracy to commit securities fraud, and making false filings with the Securities and Exchange Commission and was sentenced to thirty-six months incarceration.  That conviction matters for present purposes because, under the Gun Control Act of 1968 it is unlawful for anyone who has been convicted of a crime punishable by imprisonment for a term exceeding one year to possess a firearm or ammunition, 18 U.S.C. § 922(g)(1), and it is unlawful for any person to sell a firearm or ammunition to any such person, *id.* § 922(d)(1).  Under the so-called "business practices exception," however, those prohibitions do not apply to federal or state convictions for "offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices."  *Id.* § 921(a)(20)(A).

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the current Attorney General of the United States "is automatically substituted as a party" with no effect on Cuti's "substantial rights."  Fed. R. Civ. P. 25(d).

In Cuti's view, his convictions fall within this exception.  The government takes a contrary view and has informed Cuti that he may not lawfully obtain a firearm.  According to Cuti, moreover, three shooting clubs in New Jersey have denied his requests to borrow firearms "because of his federal felony record."  Dkt. 19 at 7 (2d Am. Compl. ¶ 32).  He brings this action seeking, among other things, a declaration that his convictions fall within the business practices exception.  *Id.* at 9 (2d Am. Compl.).  The government, in turn, moves to dismiss for failure to state a claim, arguing that the exception does not apply.  Dkt. 23.

Because the Court concludes that Cuti's convictions fall within the business practices exception, the Court will **DENY** the government's motion.

## I.  BACKGROUND

### A.    Statutory Background

The Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213 (the "Act"), as amended, prohibits "any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" from "possess[ing] . . . any firearm or ammunition."  18 U.S.C. § 922(g)(1).  Another provision of the Act makes it "unlawful for any person to sell . . . any firearm or ammunition to any person" who "has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year."  *Id.* § 922(d)(1). The statute includes a carve-out from those prohibitions, however, for individuals convicted of "certain commercial-type crimes."  S. Rep. No. 90-1097, at 112–13 (1968).  Under that provision—the "business practices exception"—"[t]he term 'crime punishable by imprisonment for a term exceeding one year' does not include . . . any Federal or State offenses pertaining to

antitrust violations, unfair trade practices, restraints of trade, or other similar offenses related to the regulation of business practices."  18 U.S.C. § 921(a)(20)(A).

**B.      Factual and Procedural Background**

Because the government moves to dismiss for failure to state a claim, the Court accepts the following factual allegations, which are contained in Cuti's second amended complaint, as true.  *See Harasek v. Nat'l R.R. Passenger Corp.*, 334 F. Supp. 3d 309, 310 (D.D.C. 2018).  To the extent the complaint contains legal conclusions, however, the Court does not accept those allegations as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In 2010, Cuti was convicted of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371; securities fraud in violation of 15 U.S.C. § 78j(b); and making false filings with the Securities and Exchange Commission in violation of 15 U.S.C. §§ 78m(a) and 78o(d).  Dkt. 19 at 3 (2d Am. Compl. ¶ 14).  Cuti was sentenced to thirty-six months of incarceration and to a period of supervised release, *id.* at 4 (2d Am. Compl. ¶ 16); he completed his term of supervised release in 2016 and "has never been charged with another crime," *id.* at 4 (2d Am. Compl. ¶ 17).  He asserts that "[t]he securities offense[s] of which [he] was convicted fall within § 921(a)(20)(A)'s exception for offenses related to the regulation of business practices similar to the listed offenses."  *Id.* at 9 (2d Am. Compl. ¶ 4).

Although Cuti alleges that he is a resident of the State of Florida, he does not seek to possess a firearm there, *id.* at 2 (2d Am. Compl. ¶¶ 7, 9)—presumably because, independent of the federal Gun Control Act, Florida law prohibits him from possessing a firearm based on his status as convicted felon, Fla. Stat. Ann. § 790.23(1)(c).  Instead, he alleges that "he spends three-to-four months of the year in New Jersey, staying in the Saddle River, New Jersey home of his adult daughter."  Dkt. 19 at 2 (2d Am. Compl. ¶ 8).  Cuti further alleges that he "intends to

continue his regular travel to New Jersey, where state and local laws do not prohibit him from purchasing and/or possessing firearms for hunting and target shooting." *Id.* (2d Am. Compl. ¶ 9).

"Prior to his conviction, and for most of his adult life, [Cuti] was an avid target shooter and hunter," *id.* at 7 (2d Am. Compl. ¶ 31), and he would like to continue that avocation during his annual stays in New Jersey, *id.* at 8 (2d Am. Compl. ¶ 33).  His 2010 felony convictions, however, have stood in the way.  In particular, he maintains that "[s]ince the termination of his supervised release, [his] request to rent or borrow firearms from private [target shooting or hunting] clubs in New Jersey have been denied based on his federal felony record, which consists solely of the securities offenses." *Id.* at 7 (2d Am. Compl. ¶ 32).  Cuti alleges that as recently as last April, "three shooting clubs" located in New Jersey "denied [his] requests to rent or borrow firearms 'because of his federal felony record.'" *Id.*

In support of this allegation, Cuti attaches to his complaint an email from "a licensed attorney in New Jersey," who explains that he was "engaged by . . . Cuti to investigate the possibility of [Cuti] shooting at various licensed ranges and bird hunting facilities located in New Jersey after disclosing to each location that . . . Cuti is a non-violent federal felon."  Dkt. 19-3 at 1.  Cuti's attorney reports that he "contacted three locations advertised online as target and/or bird hunting facilities . . . and spoke either to management or ownership," and, "[i]n each case[,] they clearly stated that they would refuse . . . Cuti access to their guns as well as access to their premises to shoot because of his federal felony record." *Id.*

Cuti also attaches to his complaint an email from an Assistant United States Attorney in the Southern District of Florida, sent to another lawyer working Cuti's behalf.  Dkt. 19-2 at 1.  That email reports that the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF")

"believes that . . . Cuti's convictions do not come within the exception in 18 U.S.C. § 921(a)(20), and" that he is therefore ineligible "to lawfully acquire a firearm in the State of Florida," *id.*— and, presumably, elsewhere in the United States.

Based on all of this, Cuti avers that "[a]s a sole and exclusive result of his status as a felon" convicted of securities law violations, he has been "prohibited from possessing a firearm in New Jersey." Dkt. 19 at 8 (2d Am. Compl. ¶ 34). He therefore maintains that he is "suffering, currently and on a continuing basis, the injury of being unable to exercise his Second Amendment right to possess firearms, which [he] would obtain and possess from private shooting clubs in New Jersey and other states where such possession is not prohibited by state or local law, but for Defendants' interpretation and enforcement of §§ 921(20)(A), 922(g)(1), and 922(d)(1) of Title 18." *Id.* (2d Am. Compl. ¶ 36).

This is not the first chapter in this litigation. The government previously moved to dismiss Cuti's first amended complaint for lack of Article III standing. Dkt. 12-1 at 1. The Court agreed that the complaint failed adequately to allege standing and, accordingly, dismissed the complaint without prejudice. Dkt. 18 at 32. In response, Cuti filed his second amended complaint, Dkt. 19, which the government has again moved to dismiss, Dkt. 23. This time, however, the government does not challenge Cuti's standing and, instead, argues that Cuti's "claim fails as a matter of law" because his 2010 conviction does not fall within the business practices exception. Dkt. 24-1 at 3.

## II.  ANALYSIS

### A.    Standing

As an initial matter, the Court addresses Cuti's Article III standing to bring this action. Although the government no longer contests Cuti's standing, this Court has "an independent

obligation to assure [itself] of [its] jurisdiction," *Waterkeeper All., Inc. v. Regan*, 41 F.4th 654, 659 (D.C. Cir. 2022), and Cuti's standing to bring this action is far from self-evident.  He does not allege, for example, that the federal government has threatened him with criminal prosecution or that it has directly impeded his ability to rent or borrow a firearm from a club located in New Jersey by, for example, requiring the clubs to certify that they do not rent or lend firearms to individuals who fall within the § 922(g)(1) prohibition.

To establish standing, Cuti must allege (1) "an injury in fact" which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) that the injury likely would be "redressed by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and internal quotation marks omitted).  "[S]ome day intentions—without any description of concrete plans," are insufficient.  *Id.* at 564.   And "[i]n a case of this sort, where the plaintiff[] seek[s] declaratory and injunctive relief, past injuries alone are insufficient to establish standing;" Cuti must, instead, "show [that] he is suffering an ongoing injury or faces an immediate threat of injury."  *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011).

Cuti alleges that he has been prevented from renting or borrowing a firearm based solely on his "underlying securities convictions."  Dkt. 19 at 8 (2d Am. Compl. ¶ 34).  The Court accepts that factual allegation, as it must at this early stage of the proceeding.  *See Lujan*, 504 U.S. a 561 (indicating that plaintiffs must support their standing to sue "with the manner and degree of evidence required at the successive stages of the litigation").  It is less clear, however, what that allegation means.  Plaintiff does not specify, for example, whether the management or ownership of the target shooting and hunting clubs that his counsel contacted have a blanket policy of forbidding all felons—regardless of whether they fall within the business practices

exception—from renting or borrowing firearms.  He does not indicate whether these policies are compelled by federal law or federal reporting requirements.  He does not indicate what his attorney told these individuals about his status, beyond the fact that he "is a non-violent federal felon."  Dkt. 19-3 at 1.  And he does not indicate whether the federal government has taken any step that has interfered with his ability to rent or borrow a firearm from a private club in New Jersey.

This case, as a result, at least arguably differs from *Dearth v. Holder*, 641 F.3d 499 (D.C. Cir. 2011), where the D.C. Circuit held that a putative gun purchaser had standing to challenge the constitutionality of a federal law that prohibits licensed firearms dealers from selling guns to individuals who do "not reside in . . . the State in which the licensee's place of business is located."  *Id.* at 500–01 (quoting 18 U.S.C. § 922(b)(3)); *see id.* at 504.  In that case, the court of appeals concluded that the federal government "erect[ed] . . . a regulatory scheme that preclude[d] [the plaintiff] from" purchasing a firearm, *id.* at 502, because "the ATF require[d] the seller to obtain from the purchaser a completed form . . . listing . . . the purchaser's state of residence," *id.* at 501.  The plaintiff twice attempted to purchase a firearm outside his state-of-residence, and "the transaction was terminated" in both cases because the plaintiff "could not provide a response to" that question.  *Id.* at 501.  As the D.C. Circuit explained, the plaintiff tried to, but could not, purchase a firearm "because of the laws and regulations he" sought to challenge.  *Id.* at 502; *see also Reyes v. Sessions*, 342 F. Supp. 3d 141, 145-46 (D.D.C. 2018).

The same might be true here, although Cuti's allegations are less well developed than those in *Dearth*.  The Court is nonetheless satisfied that Cuti has alleged enough to survive a motion to dismiss.  As the Supreme Court observed in *Lujan*, "[a]t the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice, for on a motion to

dismiss [the courts] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).  Although *Lujan* preceded the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the D.C. Circuit has embraced the *Lujan* formulation in cases decided after *Iqbal* and *Twombly*.  *See*, *e.g.*, *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015); *Am. Soc. for Prevention of Cruelty to Animals v. Feld Ent., Inc*., 659 F.3d 13, 19 (D.C. Cir. 2011).  More importantly, Cuti does not rely on mere "legal conclusions," *Iqbal*, 556 U.S. at 678, but, rather, alleges as matter of fact that "Defendants' interpretation and enforcement of §§ 921(a)(20)(A), 922(d)(1), and 922(g)(1) of Title 18" has prevented him from obtaining or possessing a firearm in New Jersey, Dkt. 19 at 8 (2d Am. Compl. ¶ 36).  That allegation, moreover, finds support in Cuti's additional allegations regarding his efforts to rent or borrow a firearm in New Jersey.

For present purposes, those allegations at least "plausib[ly]" allege that Cuti has standing to sue:  Cuti has alleged facts sufficient to permit "the court to draw the reasonable inference," *Iqbal*, 56 U.S. at 678, that he has suffered and will continue to suffer an injury-in-fact (his inability to rent or borrow a firearm and corresponding inability to engage in a life-long avocation), that was and will continue to be caused by the challenged government action (the ATF's allegedly erroneous interpretation and enforcement of § 921(a)(20)(A)), and that is likely redressable by a favorable ruling.  At this stage of the proceeding, the Court need not conclude that it is more likely than not that Cuti will carry his burden of proving that he has standing; it is enough to conclude that his claim of standing rises "above the speculative level," *Twombly*, 550 U.S. at 555, which it does.  At summary judgment, however, Cuti will face a far more demanding standard and will "no longer" be able to "rest on such 'mere allegations'" and merely

plausible inferences. *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)). At that stage, he

will need to "'set forth' by affidavit or other evidence 'specific facts,'" supporting his claim to

standing. *Id.* (quoting Fed. R. Civ. P. 56(e)).

## B.    The Business Practices Exception

Turning to the merits, the Court must determine whether the Cuti's convictions fall

within the business practices exception. That provision provides as follows:

> The term "crime punishable by imprisonment for a term exceeding one year"
> does not include—
>
> (A) any Federal or State offenses pertaining to antitrust violations, unfair trade
> practices, restraints of trade, or other similar offense relating to the regulation of
> business practices. . . .

18 U.S.C. § 921(a)(20). All agree, to start, that Cuti's convictions under the securities laws do

not "pertain" to antitrust violations or restraints of trade, and Cuti suggests only in passing that

his 15 U.S.C. § 78j(b) conviction might pertain to "unfair trade practices."[2] Dkt. 25 at 13. The

debate, instead, focuses on the question whether Cuti's convictions are for "similar offenses

relating to the regulation of business practices." 18 U.S.C. § 921(a)(20)(A).

The government takes a restrictive view of the business practices exception, arguing that

the Court should be guided by an "elements test." Dkt. 24-1 at 6. Under that test, the exception

applies only to crimes as to which the government must prove "as an element of the predicate

offense, that competition . . . [was] affected." *Id.* at 7 (alteration and omission in original)

(quoting *United States v. Coleman*, 609 F.3d 699, 706 (5th Cir. 2010)). That is, the exception

applies only to those crimes that require "proof of a direct effect on competition." *Id.* (citing

*United States v. Schultz*, 586 F.3d 526, 530 (7th Cir. 2009)). From this premise, the government

_____

[2] Throughout his briefing, however, Cuti focuses on whether his offenses are "similar" to the
enumerated offenses, including unfair trade practices. *See, e.g.*, Dkt. 25 at 4, 7.

then maintains that Cuti's convictions do not qualify, because none of the crimes of which he convicted "required the government to prove that his conduct had an effect on competition or consumers."  *Id.* at 8.

Cuti disputes the premise of the government's argument.  Relying on Judge Bates' decision in *Reyes v. Sessions*, 342 F. Supp. 3d 141 (D.D.C. 2018), he posits that "[t]he common thread between the enumerated offenses is that they are commercial crimes intended to address economic harms to competitors or consumers—not that they require proof of such harm as an element of the offense," Dkt. 25 at 7 (alteration in original) (quoting *Reyes*, 342 F. Supp. 3d at 150).  Understood in that light, Cuti continues, his convictions easily qualify, because the Securities Exchange Act of 1934 was "primarily intended to prevent economic harm to investors" and, *id.* at 10, when considering a conspiracy conviction, the Court must look to the underlying crime, *id.* at 11–14.

Neither the Supreme Court nor the D.C. Circuit has addressed the meaning or scope of the business practices exception.  Several other courts of appeals have, however, as has another judge on this Court.  After surveying those authorities, this Court is persuaded by Judge Bates' well-reasoned opinion in *Reyes* and agrees that courts must "examin[e] both the primary purpose and the elements of the predicate business practices offense to determine whether an offense" falls within the exception.  342 F. Supp. 3d at 151.  The Court is also persuaded that, as in *Reyes*, the primary purpose of the underlying securities offenses at issue here is "the protection of investors," and they therefore fall within the business practices exception.  *Id.* at 154.

As Judge Bates observed in *Reyes*, different circuits have taken different approaches to the exceptions.  342 F. Supp. 3d at 149–50.  Some history, however, places these decisions in context.  Before 1986, the business practices exception included the same enumerated crimes as

10

those included in the current version of the statute, but the catch-all for "other similar offenses"

applied only to "similar offenses relating to the regulation of business practices *as the Secretary*

*[of the Treasury] may by regulation designate*."  Pub. L. No. 90-618, 82 Stat. 1213, 1216 (1968)

(emphasis added).  The Secretary never exercised this authority, *see Reyes*, 342 F. Supp. 3d at

143, and, in 1968, Congress struck the final clause—that is, "as the Secretary may by regulation

designate"—from the exception, leaving it courts to determine which unenumerated crimes

constitute "similar offenses."  *See* Firearms Owners' Protection Act, Pub. L. No. 99-308, 100

Stat. 449, 449 (1986).

The Second Circuit first recognized the elements test prior to the 1986 amendment, in a

case in which the court was not asked to determine whether an offense was "similar" to one of

the enumerated offenses but, rather, was asked whether the enumerated offense of "unfair trade

practices" included falsifying a customs declaration in violation of 18 U.S.C. § 542.  *See United*

*States v. Meldish*, 722 F.2d 26, 28 (2d Cir. 1983).  In the *Meldish* decision, the Second Circuit

reasoned as follows:

> Although it is almost impossible to formulate an all-inclusive definition of
> "unfair trade practice," *see FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 240
> (1972), implicit in the term itself is the requirement that the practice adversely
> affect either competitors or consumers, *see id.* at 241–44.  Among the practices
> which may cause such an adverse effect are the suppression of competition,
> *Shakespeare Co. v. FTC*, 50 F.2d 758, 759–60 (6th Cir. 1931), price
> discrimination, *Oliver Bros., Inc. v. FTC*, 102 F.2d 763, 767 (4th Cir. 1939),
> deceptive advertising or labeling, *Armstrong Paint & Varnish Works v. Nu-
> Enamel Corp.*, 305 U.S. 315, 335–36 (1938), and the exploitations of child
> purchasers, *FTC v. R.F. Keppel & Bro., Inc.*, 291 U.S. 304, 313 (1934).
>
> Section 542 does not concern itself with matters such as these.  To secure a
> conviction under section 542, the Government need prove only "(1) an attempt
> to introduce imported merchandise into the United States (2) 'by means of' any
> false statement or practice (3) without reasonable cause to believe the truth of
> such statement or practice." *United States v. Rose*, 570 F.2d 1358, 1363 (9th Cir.
> 1978).  A violation of section 542 in no way depends upon whether it has an
> effect on competition or consumers.

*Id.* at 27–28.  The *Meldish* court, accordingly, concluded that 18 U.S.C. § 542 was not an "an offense pertaining to an 'unfair trade practice' within the meaning of section 921(a)(20)."  *Id.* at 27.

Several years after Congress amended the exception, leaving it to courts (rather than to the Secretary of the Treasury) to decide what crimes are "similar" to the enumerated offenses, the Fifth Circuit applied an elements test.  *See Dreher v. United States*, 115 F.3d 330, 332 (5th Cir. 1997).  Without noting the change in the statute or the difference in the question presented, the Fifth Circuit observed that *Meldish* "look[ed] to the elements of the conviction only to determine whether the 'offense' ha[d] an anti-competitive effect," *id.*, and then simply held that the elements of the predicate offenses at issue there—18 U.S.C. §§ 371 & 1341—did not include "an effect upon competition," *id.* at 332–33.  *But see United States v. Coleman*, 609 F.3d 699, 705 (5th Cir. 2010) (noting that "[c]ourts have looked to the legislative history of a statute in order to determine whether it falls within the business practices exception").  The Seventh Circuit has taken a similar approach, focusing "on the elements of the predicate conviction" to determine whether "the government [was] . . . required to prove . . . that competition or consumers were affected."  *United States v. Schultz*, 586 F.3d 526, 530 (7th Cir. 2009).  In the Seventh Circuit's view, the "possible incidental effects of a defendant's activities" do not matter."  *Id.*

The Eighth Circuit, in contrast, has—in Judge Bates' words—taken a more "holistic approach to the business practices exception."  *Reyes*, 342 F. Supp. 3d at 149.  In *United States v. Stanko*, 491 F.3d 408 (8th Cir. 2007), the Eighth Circuit considered whether multiple violations of the Federal Meat Inspection Act, 21 U.S.C. § 601 *et seq.*, fell within the business practices exception.  *Id.* at 410.  Although the court ultimately concluded that the exception was

inapplicable, it engaged in an analysis of both the "*purpose of the criminal statute* and the elements the Government must prove for conviction under it."  *Id.* at 415 (emphasis added). Providing helpful guidance, the court observed that the three enumerated crimes must be considered under the noscitur a sociis canon, "which instructs that a word is 'known by the company it keeps.'"  *Id.* at 416 (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). Applying the canon to the three types of enumerated crimes, the Eighth Circuit deduced that they all "clearly involve negative effects on consumers or commerce."  *Id.*

The Eighth Circuit's "more holistic approach" better accords with the plain language of the business practices exception than does the elements test.  *Reyes*, 342 F. Supp. 3d at 149.  To start, § 921(a)(20)(A) makes no mention of the "elements" of the crime.  Rather, the provision refers to certain "offenses" and to "other similar offenses relating to the regulation of business practices."  18 U.S.C. § 921(a)(20)(A).  To be sure, two crimes that have similar elements will, in all likelihood, constitute similar crimes.  But that it not the only way to discern similarity, and nothing in the statute limits the relevant inquiry to the statutory elements.  As Judge Bates observed in *Reyes*, "any strict application of an elements requirement would be inconsistent with the explicit terms of the business practices exception," because, unlike the crimes enumerated in 18 U.S.C. § 924(e) (to which the Supreme Court has applied an elements test), "[t]he three enumerated offense are not generic common law offenses reducible to specific elements that comprise the crime."  342 F. Supp. 3d at 150 (citing *Taylor v. United States*, 495 U.S. 575, 598–99 (1990)).

But, even more significantly, the enumerated types of crimes listed in § 921(a)(20)(A) do not all include, as an element, proof "that competition . . . [was] affected" or "proof of a direct effect on competition."  Dkt. 24-1 at 7.  As Judge Bates, again, correctly observed in *Reyes*:

"Most criminal antitrust violations, for example, are considered to be *per se* harmful to competition and consumers and require no actual proof of injury." *Reyes*, 342 F. Supp. 3d at 150 (citing *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 (1940)).  It would be a strange statute, indeed, that requires that any "similar offense relating to the regulation of business practices" include injury to competition or to consumers as an element of the offense, even though one of the three enumerated offenses typically includes no such element.  The Court is, accordingly, unpersuaded that the business practices exception embodies a strict elements test.  But the Court is also wary of opening the door to a test that looks to the circumstances of each individual crime.  The exception turns on the nature of the "offense," and not on the nature of the defendant's unlawful conduct.

The Court must, therefore, identify the "common thread," *Reyes*, 342 F. Supp. 3d at 150, that runs between the enumerated offenses and "other similar offenses relating to the regulation of business practices," 18 U.S.C. § 921(a)(20)(A).  One factor, of course, is that the offenses must involve the regulation of business practices.  But that, alone, is insufficient, since it would give no meaning to the word "similar," which connects the two clauses of exception.  *See Loughrin v. United States*, 573 U.S. 351, 358 (2014) (noting that courts must, where possible, give meaning to every word in a statute).  The word "similar" means "having characteristics in common."  *Similar*, Merriam-Webster, https://www.merriam-webster.com/dictionary/similar (last visited Sept. 29, 2022).  The Eighth Circuit's decision in *United States v. Stanko*, 491 F.3d 408 (8th Cir. 2007), moreover, answers the question of what characteristics the enumerated types of offenses have in common: they all "involve negative economic effects on consumers or competition."  *Id.* at 416.  The Sherman Act, for example, was "designed to be a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of

14

trade." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 4 (1958). "Restraint[s] of trade," similarly, involves "[a]n agreement between two or more businesses . . . intended to eliminate competition." *Restraint of Trade*, Black's Law Dictionary (10th ed. 2014). And "implicit in the term" unfair trade practice is that "the practice adversely affect[s] either competitors or consumers." *Meldish*, 722 F.2d at 27–28. As Judge Bates put it in *Reyes*: "Other courts have found—and this Court agrees—that the common thread that unites the enumerated offenses and those offenses similar to them is that they are commercial offenses that address economic harm to competition or consumers." 342 F. Supp. 3d at 148 (internal quotation marks omitted) (collecting cases).

The Court must next determine whether Cuti's three predicate offenses fall within the business practices exception, as understood in this light. That is not a difficult question. Indeed, the government hangs its hat entirely on the elements test and never disputes that the primary purpose of these securities statutes is to protect consumers of securities.

Ascertaining the primary purpose of a statute can sometimes be a difficult task. Here, however, the Court has little doubt that Cuti's convictions fit comfortably within the exemption. The Court, once again, turns to Judge Bates' opinion in *Reyes*, where he resolved a similar question. As Judge Bates recounts, following the 1929 stock market crash, Congress created the Securities and Exchange Commission and passed two laws designed to prevent "financial ruin for thousands of investors": the Securities Act of 1933 and the Securities and Exchange Act of 1934 ("Exchange Act"). *Id.* at 152. The Exchange Act, specifically, sought to "proactively . . . prevent the occurrence of such harm in the future," by "impos[ing] disclosure requirements" that "protect investors from incomplete market information." *Id.* at 152–53. This history makes clear—and again, the government never suggests otherwise—that the "purpose of the

[Exchange] Act as a whole is to regulate business practices in order to protect investors . . . from economic harm." *Id.* at 153–54; *see also Koch v. S.E.C.*, 793 F.3d 147, 150 (D.C. Cir. 2015) ("The Securities and Exchange Act of 1934 . . . 'was intended principally to protect investors against manipulation of stock prices through regulation of transactions upon securities exchanges.'" (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976))). This history suggests that Cuti's securities conviction falls within the business practices exception. The Court nevertheless considers, more specifically, the purpose behind Cuti's predicate offenses. *Reyes*, 342 F. Supp. 3d at 154.

First, Cuti was convicted of securities fraud in violation of 15 U.S.C. § 78j(b), a subsection of the Exchange Act. Dkt. 19 at 14 (2d Am. Compl. ¶ 14); Dkt. 25 at 12. Section 78j(b) makes it "unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest *or for the protection of investors*." 15 U.S.C. § 78j(b) (emphasis added). 17 C.F.R. § 240.10b-5(b), in turn, prevents persons from "mak[ing] any untrue statement of a material fact" or "omit[ting] to state a material fact . . . in connection with the purchase or sale of any security." *Id.* And to fulfill that materiality requirement, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

Therefore, the "explicit text of 15 U.S.C. § 78j(b) and the materiality requirement of the securities fraud offense together demonstrate that the securities fraud . . . statute that [Cuti]

violated was primarily intended to protect investors from economic harm." *Reyes*, 342 F. Supp. 3d at 154.  The provision makes clear, on its face, its interest in protecting investors.  The materiality requirement, moreover, confirms that the offense seeks to prevent investors from poorly informed securities-related decisions that are to their economic detriment.

Second, Cuti was convicted of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, the general federal conspiracy statute.  This Court joins others in concluding that, in considering whether a conviction under the general conspiracy statute falls within the business practices exception, it should look to the elements and purpose "of the target offense[s] of the conspiracy." *Coleman*, 609 F.3d at 705; *see also Stanko*, 491 F.3d at 418–19.  Therefore, the analysis for conspiracy to commit securities fraud is identical to Cuti's securities fraud conviction.

Third, Cuti was convicted of making false filings in violation of 15 U.S.C. §§ 78m(a) and 78o(d).  Dkt. 19 at 3 (2d Am. Compl. ¶ 14).  Section 78m(a) requires securities issuers to file with the SEC "such information and documents . . . as the Commission shall require to keep reasonably current the information and documents required to be included in or filed with" certain application or registration statements, as well as "such annual reports . . . certified if required by the rules and regulations of the Commission by independent public accountants, and such quarterly reports . . . as the Commission may prescribe."  15 U.S.C. § 78m(a)(1)–(2).  And Section 78o(d) requires securities issuers to file with the Securities and Exchange Commission "such supplementary and periodic information, documents, and reports as may be required pursuant to section 78m of this title in respect of a security registered pursuant to section 78*l* of this title." *Id.* § 78o(d)(1).  These provisions "support[] the Exchange Act's disclosure system," which helps ensure market participants have access to adequate, accurate information before

buying or selling securities.  *Reyes*, 342 F. Supp. 3d at 155.  "Hence, it is clear that the primary

purpose" of these filings provisions is "to protect investors from economic harm," and they too

fall under the business practices exception.  *Id.*

In sum, all three of Cuti's predicate offenses have the primary purpose of protecting

consumers of securities from economic harm.  Each therefore "pertain[s] to antitrust violations,

unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of

business practices."  18 U.S.C. § 921(a)(20)(A).  They are therefore excluded from the definition

of "crime[s] punishable by imprisonment for a term exceeding one year," under the business

practices exception, *id.*, and do not trigger the application of the § 922(g)(1) and (d)(1)

prohibitions.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, Dkt. 23, is hereby **DENIED**.

**SO ORDERED**.

 /s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  September 29, 2022