**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

ANTHONY J. CUTI,

        *Plaintiff*,

    v.

MERRICK GARLAND, *in his official
capacity as Attorney General of the United
States*, *et al*.,

        *Defendants.*

                Civil Action No. 19-cv-3455 (RDM)

---

<u>**MEMORANDUM OPINION**</u>

This matter is before the Court on Plaintiff Anthony Cuti's Motion for Summary Judgment (Dkt. 33) and Defendants' Cross-Motion for Summary Judgment (Dkt. 35). The parties agree that the sole question at issue is "whether Cuti has sufficiently established Article III standing." Dkt. 33 at 1; *see also* Dkt. 35-1 at 3. For the reasons explained below, the Court concludes that Plaintiff lacks Article III standing. The Court will, accordingly, **DENY** Plaintiff's Motion for Summary Judgment, **GRANT** Defendants' Cross-Motion for Summary Judgment, and **DISMISS** the case for lack of jurisdiction.

## I. BACKGROUND

The Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213 (the "Act"), as amended, prohibits "any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" from "possess[ing] . . . any firearm or ammunition," 18 U.S.C. § 922(g)(1). Another provision of the Act makes it "unlawful for any person to sell . . . any firearm or ammunition to any person" who "has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." *Id.* § 922(d)(1).

The statute includes a carve-out from those prohibitions, however, for individuals convicted of "certain commercial-type crimes."  S. Rep. No. 90-1097, at 112–13 (1968).  Under that provision—the "business practices exception"—"[t]he term 'crime punishable by imprisonment for a term exceeding one year' does not include . . . any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices."  18 U.S.C. § 921(a)(20)(A).

Plaintiff Anthony J. Cuti was convicted in 2010 of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, securities fraud in violation of 15 U.S.C. § 78j(b), and making false filings with the Securities and Exchange Commission in violation of 15 U.S.C. §§ 78m(a) and 78o(d).  Dkt. 33-1 at 1 (Pl. SUMF ¶ 1).  He was sentenced to thirty-six months in prison, a $5 million fine, and a period of supervised release.  *Id.* (Pl. SUMF ¶ 2–3).  He was released long ago and is no longer on supervised release.  Since then, he has not been charged with any other crime.  *Id.* (Pl. SUMF ¶ 4).

Plaintiff commenced this action in November 2019.  *See* Dkt. 1.  In his original complaint, he alleged that he resides in the state of Florida and "desires to purchase and possess firearms for the sport of target shooting but is prevented from doing so only by §§ 992(g)(1) and (d)(1) and the implementing regulations promulgated and enforced by" the federal government.  *Id.* at 2–3 (Compl. ¶ 7).  In response, the government moved to dismiss, arguing that Plaintiff lacked standing because the state of Florida prohibits all persons "[c]onvicted of or found to have committed" a federal felony from possessing firearms.  Dkt. 10-1 at 7 (quoting Fla. Stat. Ann. § 790.23(1)(c)).  As the government explained, "unlike federal law, there is no exception under Florida law for felons convicted of offenses 'pertaining to antitrust violations, unfair trade

practices, restraints of trade, or other similar offenses relating to the regulation of business practices.'"  *Id.* (quoting 18 U.S.C. § 921(a)(20)(A)).

Plaintiff then filed an amended complaint on February 17, 2020, adding the allegation that he "intends to travel to states where state law does not prohibit him from purchasing and/or possessing firearms for the sport of target shooting."  Dkt. 11 at 3 (Am. Compl. ¶ 7).  The government again moved to dismiss, repeating its prior arguments and adding an argument directed at Plaintiff's new allegation.  Dkt. 12-1.  The government argued that the new allegation failed for two reasons:  "First, because Plaintiff does not allege that he has any concrete plans to visit any particular state during any specified time period, he has at most pleaded a conjectural or hypothetical future injury," and, second, "because federal law not challenged by Plaintiff would prohibit him from acquiring a firearm outside of his state of residence, he cannot satisfy the traceability and redressability requirements of Article III standing."  *Id.* at 11.  The Court agreed that Plaintiff's allegations respecting standing lacked sufficient detail and, accordingly, dismissed the amended complaint without prejudice.  Min. Order (March 25, 2021); Dkt. 18.

Plaintiff filed his second amended complaint, which is the operative complaint, on April 29, 2021.  Dkt. 19.  The government again moved to dismiss, but this time said nothing about standing and, instead, focused its arguments on the sufficiency of Plaintiff's claim on the merits. Dkt. 23.  The Court denied that motion for two reasons.  First, notwithstanding the government's failure to address standing, the Court considered the question sua sponte, as it is required to do. Dkt. 29 at 5–8.  Applying the permissive motion-to-dismiss standard, the Court concluded that Plaintiff had alleged enough—albeit just enough—to pass jurisdictional muster at that early stage of the proceeding.  The Court wrote:

> For present purposes, those allegations at least "plausib[ly]" allege that Cuti has standing to sue: Cuti has alleged facts sufficient to permit "the court to draw the

reasonable inference," [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)], that he has suffered and will continue to suffer an injury-in-fact (his inability to rent or borrow a firearm and corresponding inability to engage in a life-long avocation), that was and will continue to be caused by the challenged government action (the [Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF")] allegedly erroneous interpretation and enforcement of § 921(a)(20)(A)), and that is likely redressable by a favorable ruling.  At this stage of the proceeding, the Court need not conclude that it is more likely than not that Cuti will carry his burden of proving that he has standing; it is enough to conclude that his claim of standing rises "above the speculative level," [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)], which it does.

Dkt. 29 at 8.  But, of particular relevance here, the Court added:

> At summary judgment, however, Cuti will face a far more demanding standard and will "no longer" be able to "rest on such 'mere allegations'" and merely plausible inferences.  [*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)] (quoting Fed. R. Civ. P. 56(e)).  At that stage, he will need to "'set forth' by affidavit or other evidence 'specific facts,'" supporting his claim to standing.  *Id*. (quoting Fed. R. Civ. P. 56(e)).

*Id.* at 8–9.

Second, the Court concluded that Plaintiff stated a claim on the merits.  As the Court explained, all three of Plaintiff's offenses of conviction were pursuant to statutes that "have the primary purpose of protecting consumers of securities from economic harm" and that "[e]ach therefore 'pertain[s] to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices.'"  *Id.* at 18 (quoting 18 U.S.C. § 921(a)(20)(A)).  The Court was thus unpersuaded by the government's contention that Plaintiff had failed to allege facts sufficient to show that his convictions were subject to the business practices exception, and, accordingly, declined to dismiss the complaint for failure to state a claim.  *Id.*

That, however, did not provide sufficient basis to grant affirmative relief to Plaintiff for two reasons.  First, Plaintiff had not moved for judgment on the pleadings or for summary judgment.  Second, Plaintiff had only plausibly alleged that he had Article III standing; he

continued to bear the burden of proof on that question.  Hence, after conferring with the parties, the Court set a schedule for the parties to file cross-motions for summary judgment on the question of standing.  Min. Order (Nov. 17, 2022).

Plaintiff filed his motion for summary judgment on January 16, 2023.  Dkt. 33.  In support of that motion, Plaintiff submitted a declaration attesting that he is a resident of the state of Florida; that he regularly travels "to the [s]tate of New Jersey," where "three shooting clubs" had "informed [his] attorney . . . that they would refuse [to grant him] access to their guns [and] to their premises to shoot" after "he disclosed to them that [he is] a 'non-violent federal felon.'" Dkt. 33-3 at 1–3 (Cuti Decl. ¶¶ 3, 6–7).  He further attested that he "understands that it is unlawful under New Jersey law to possess any rifle or shotgun without first obtaining a" New Jersey Firearms Purchase Identification Card ("NJFPIC"); that he "applied online for a NJFPIC via the Saddle River, New Jersey Police Department as required by state law;" and that "the Saddle Rive Police Department formally denied [his] NJFPIC application."  *Id.* at 2 (Cuti Decl. ¶¶ 8–9, 12).  The letter denying Plaintiff's application for an NJFPIC stated as follows:

> The investigation uncovered and indicated that you have a Criminal History Record with the Federal Government FBI/4469CD9.  According to New Jersey Statute, no handgun purchase permit or firearms purchaser identification card shall be issued to any person who has ever been convicted of a crime of the first, second, third, or fourth degree in this state, or equivalent in another state or jurisdiction, that has not been expunged or sealed.  It is not in the interest of the public health, safety or welfare of the citizens of the State of New Jersey to issue you a Firearms Purchaser Identification Card, pursuant to N.J.S. 2C:58-3(c)5.

*Id.* at 2–3 (Cuti Decl. ¶ 12) (emphasis omitted).  Finally, Plaintiff attested that, on January 13, 2023, he "appealed the Saddle River Police Department's formal denial of [his] NJFPIC application."  *Id.* at 3 (Cuti Decl. ¶ 15).

On April 4, 2023, the government opposed Plaintiff's motion and cross-moved for summary judgment.  Dkt. 34; Dkt. 35.  In the government's view, Plaintiff's submission merely

confirmed that he lacks standing.  As he concedes, Plaintiff has been barred by the state of New Jersey from possessing a firearm.  Moreover, according to the government, a recently enacted "New Jersey law now independently prohibits Plaintiff from possessing firearms as a result of his federal conviction."  Dkt. 35-1 at 3.  As a result, according to the government, his asserted "injury cannot be fairly traced to Defendants," and, "[e]ven if this Court were to grant Plaintiff the relief he seeks, he would still be legally barred from renting or borrowing a firearm from the shooting clubs that he visits in New Jersey."  *Id.*

Because Plaintiff appealed the decision of the Saddle Rive Police Department denying his NJFPIC application, and because the resolution of that appeal was likely "directly [to] affect[] the sole remaining issue in this case," the Court issued an order staying proceedings pending a decision on the appeal.  Min. Order (June 9, 2023).  On July 31, 2023, Judge Christopher Kazlau of the Superior Court of New Jersey, Bergen County—Law Division, issued an order denying Plaintiff's appeal.  That order provides as follows:

> **ORDERED** that Anthony J. Cuti's application for a firearms purchaser identification card and a permit to purchase a handgun is hereby **DENIED** because he has been convicted of any crime in this State or its felony counterpart in any other state or federal jurisdiction, specifically in the United States District Court for the Southern District of New York, N.J.S.A. 2C:58-3(c)(l); and because the issuance would not be in the interest of the public health, safety or welfare because he is found to be lacking the essential character of temperament necessary to be entrusted with a firearm, N.J.S.A. 2C:58-3(c)(5).

Dkt. 42-1 at 2–3 (Joint Status Report Ex. 1).  In response to an inquiry from the Court, Plaintiff subsequently represented that he "will not appeal the July 28, 2023, New Jersey Superior Court order denying his NJFPIC."  Dkt. 43 at 1.  The parties' dispute, accordingly, is now ripe for decision.

## II.  LEGAL STANDARD

A plaintiff bears the burden with respect to standing at every stage of the litigation, although that burden evolves with the progressively more demanding standards that apply over the course of the litigation.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  At the summary judgment stage, a plaintiff may no longer rest on mere allegations, and, instead, must "cit[e] to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), that demonstrate that there is no genuine dispute of material fact as to the existence of "a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (citation omitted).  Similarly, a defendant may obtain summary judgment on standing by demonstrating "that there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and that the plaintiff cannot establish the required elements of Article III standing based on the record evidence, *see Lujan*, 504 U.S. at 561.  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

To establish standing, a plaintiff must prove (1) "an injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) that "the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 560–61 (citations and internal quotation marks omitted).  "Causation and redressability typically 'overlap as two sides of a causation coin,'" because "[a]fter all, if a government action causes an injury, enjoining the action usually will redress that injury."  *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 6 n.1 (D.C. Cir. 2017)

(quoting *Dynalantic Corp. v. Dep't of Def.*, 115 F.3d 1012, 1017 (D.C. Cir. 1997)); *see also Siegel v. U.S. Dep't of Treasury*, 304 F. Supp. 3d 45, 52 (D.D.C. 2018).

"Although 'standing is not precluded' in a case that turns on third-party conduct, 'it is ordinarily substantially more difficult to establish,'" *Arpaio v. Obama*, 797 F.3d 11, 20 (D.C. Cir. 2015) (quoting *Lujan*, 504 U.S. at 562), and the D.C. Circuit "ha[s] required 'substantial evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation and the likelihood of redress,'" *id.* (quoting *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 941 (D.C. Cir. 2004)). "Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *West v. Lynch*, 845 F.3d 1228, 1235 (D.C. Cir. 2017) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996) (en banc)). "The key word is 'likely,'" *id.* (quoting *Lujan*, 504 U.S. at 561), and thus "the prospect of obtaining relief from the injury as a result of a favorable ruling" cannot be "too speculative," *Allen v. Wright*, 468 U.S. 737, 752 (1984). As with causation, when redressability "depends on the unfettered choices made by independent actors not before the court[] and whose exercise of broad and legitimate discretion the court[] cannot presume either to control or to predict, it becomes substantially more difficult to establish standing." *Scenic Am., Inc. v. U.S. Dep't of Transp.*, 836 F.3d 42, 50 (D.C. Cir. 2016) (internal quotation marks omitted) (quoting *Lujan*, 504 U.S. at 562). "Courts do not lightly speculate how independent actors not before them might" act, and "[w]hen conjecture is necessary, redressability is lacking." *West*, 845 F.3d at 1237 (internal quotation marks and alterations omitted).

### III.  ANALYSIS

Plaintiff lacks standing because he has failed to show that the injury that he alleges is either traceable to the ATF's construction of the business practices exception or redressable by a favorable decision from this Court.  In his motion for summary judgment and in his opposition to the government's cross-motion, Plaintiff identifies only one injury that he contends is traceable to the government's assertedly too-narrow construction of the exception and redressable by an order from this Court declaring that the government has misread the exception: his ability to possess and use a firearm in New Jersey.  *See* Dkt. 33 at 5.

On Plaintiff's telling, the federal government has caused that injury.  Indeed, he initially claimed that he wanted to hunt and shoot in New Jersey (rather than in Florida, where he resides), in part, "because state and local laws do *not* prohibit him from purchasing and/or possessing firearms for hunting and target shooting" there.  Dkt. 33-1 at 2 (Pl. SUMF ¶ 6) (emphasis added).  He argued that, light of the ATF's construction of the exception, either "the FBI or ATF directed the Saddle River Police Department to ensure that [he] was not in a possession of any guns and ammunition based on [his] predicate offenses."  Dkt. 33 at 6.  According to Plaintiff, "the Saddle River Police Department . . . rejected [his] NJFPIC application" because of—and only because of—the federal government's misreading of the business practices exception.  *Id.* at 7.

The order recently issued by the New Jersey Superior Court demonstrates that this account is incorrect.  As Plaintiff acknowledges, before he can possess a gun and shoot at a New Jersey shooting club he must possess an NJFPIC.  Dkt. 33-1 at 2 (Pl. SUMF ¶ 8).  But Plaintiff made no effort to satisfy this state-law condition until November 2022, *id.* at 2 (Pl. SMUF ¶ 10)—almost three years after he filed his original complaint in this action, Dkt. 1, and one year

after he filed his second amended complaint, Dkt. 19.  A month later, on December 22, 2022, the

Saddle River Police Department denied his application based, not on the ATF's reading the

business practices exception or any other federal law, but, rather, based on New Jersey state law.

The letter from the Saddle River Police Department denying his application explained that,

"[a]ccording to New Jersey Statute," a "person who has ever been convicted of a crime of the

first, second, third, or fourth degree in this state, *or equivalent in another* state or *jurisdiction*,"

which "has not been expunged or sealed," may not obtain a NJPIC.  Dkt. 33-1 at 3 (Cuti Decl.

¶ 16) (emphasis added).  The letter further explained that it was "not in the interest of the public

health, safety or welfare of the citizens of the State of New Jersey to issue [Cuti] a Firearms

Purchaser Identification Card, pursuant to N.J.S. 2C:58-3(c)5." *Id.*  The letter makes no

reference to the business practices exception, the AFT's reading of that provision, or 18 U.S.C.

§§ 922(g)(1) & 922(d)(1).  And to the extent the letter implicitly refers to any federal law, it

refers to the federal "crime" or "crimes" that Plaintiff was "convicted" of committing—that is,

securities fraud and the making of false statements.  Plaintiff, however, does not dispute that he

was, in fact, convicted of those crimes.  In all other respects, the letter refers to, interprets, and

enforces only state law.

Although Plaintiff raises doubts about this reading of the letter, he does not—and

cannot—respond to two salient points: first, nothing in the letter even appears to turn on the

meaning of the business practices exception, and, second, it is Plaintiff who bears the burden of

proof with respect to jurisdiction, and his speculation about how the AFT's interpretation of the

exception might have influenced the state is wholly unsupported.

Any doubt about whether federal law has any bearing on Plaintiff's quest to obtain an

NJFPIC is put soundly to rest by the July 31, 2023 order from the Superior Court of New Jersey,

Bergen County – Law Division, which upheld the Saddle River Police Department's decision on

appeal.  Dkt. 42-1 at 2–3 (Joint Status Report Ex. 1).  That order provides two, state-law grounds

supporting the denial of Plaintiff's application for an NJFPIC.  The appeal was denied, first,

because Plaintiff had been convicted of the "felony counterpart" to a New Jersey crime—that is,

the convictions that Plaintiff sustained in the United States District Court for the Southern

District of New York.  *Id.*  And, second, it was denied "because the issuance" of a NJFPIIC

"would not be in the interest of the public health, safety or welfare because [Cuti] is found to be

lacking the essential character of temperament necessary to be entrusted with a firearm."  *Id.*  As

to both, the New Jersey court cited and applied New Jersey law (N.J.S.A. 2C:58-3(c)(1), 2C:58-

3(c)(5), respectively)—not the business practices exception or the ATF's interpretation of the

exception.  Although Plaintiff presses for a different reading of the "felony counterpart"

provision than that adopted by the New Jersey court, he offers no basis for this Court to

substitute its view—even if it agreed with Plaintiff, which it does not—for that of the New Jersey

court.

It follows that Plaintiff is unable to possess a gun in New Jersey because he has been

denied the necessary permit under New Jersey law, Dkt. 42-1 at 2–3 (Joint Status Report Ex. 1),

and that, even if this Court were to decide that federal law and regulations do not prohibit

Plaintiff from possessing a firearm as a matter of federal law, his alleged injury would

nonetheless go unredressed.  He would still be barred from hunting and shooting in New Jersey

as a matter of New Jersey law.  In similar circumstances, this Court and other courts have

(unsurprisingly) held that a plaintiff lacks standing to challenge a federal firearms restriction.

*See, e.g.*, *Kimelman v. Garland*, 588 F. Supp. 3d 84, 88–89 (D.D.C. 2022); *Daogaru v. U.S. Att'y*

*General*, 683 F. App'x 824, 825–26 (11th Cir. 2017); *Sherlund v. Sessions*, No. 18-cv-1126, 2018 WL 5982602, *3 (D. Ariz. Nov. 14, 2018).

Plaintiff attempts a new tack in his response to the government's cross-motion for summary judgment.  There, he argues that (1) the government confuses mootness with standing, (2) the amended New Jersey law does not bar him from obtaining a permit, and (3) he should be granted declaratory relief regardless of whether he can obtain an NJFPIC.  Dkt. 39.  Each of these arguments is unconvincing.

First, Plaintiff argues that prior to the amendments enacted on December 22, 2022, New Jersey state law did not provide a reason for the Saddle River Police Department to have denied him an NJFPIC, and he hypothesizes that, if this Court had resolved the case before December 22, 2022, he might have obtained an NJFPIC.  *Id.* at 3.  As a result, in Plaintiff's view, the question before the Court is not standing, but mootness, and the bar for establishing that a claim is not moot is lower than the bar for establishing standing.  Plaintiff, then, makes at least passing reference to two possible exceptions to the mootness doctrine, asserting that a case is not moot if the controversy is capable of repetition yet evading review, or, at least arguably, "if there are secondary or collateral injuries despite resolution of the plaintiff's primary claim."  *Id.* at 5.

There are multiple problems with this argument.  To start, Plaintiff has borne the burden of establishing standing throughout this litigation, and he has never shown—when he filed or at any subsequent time—that the ATF's reading of the business practices exception had caused him a cognizable injury or that it was likely to do so in the foreseeable future.  It is one thing to allege facts sufficient to withstand a motion to dismiss.  But that does not mean that Plaintiff has ever *shown* that he once had standing, only to see that standing evaporate based on intervening events. Indeed, Plaintiff acknowledges that he did not attempt to obtain a NJFPIC before November

2022, Dkt. 33-1 at 2 (Pl. SUMF ¶ 10), and so, at the time he brought this suit, at least one substantial, non-federal law barrier stood in his way of obtaining the relief he seeks.

To be sure, if obtaining a NJFPIC was a mere formality at that time, this failing might be of little import. But that is not the case. To the contrary, even before New Jersey amended its laws in December 2022, the shooting ranges that Plaintiff wanted to visit required an NJFPIC, *id.* (Pl. SUMF ¶ 8), and the then-governing law precluded "any person where the issuance would not be in the interest of the public health, safety or welfare" from obtaining an NJFPIC, *see* 2022 NJ Sess. Law Serv. Ch. 131. Significantly, this language is similar to language that appears in the later version of the law[1] and, even more importantly, it tracks the language that appeared in the letter from the Saddle River Police Department denying Plaintiff's application in 2022, Dkt. 33-1 at 3 (Cuti Decl. ¶ 16) ("It is not in the interest of the public health, safety or welfare of the citizens of the State of New Jersey to issue you a Firearms Purchaser Identification Card, pursuant to N.J.S. 2CL58-3(c)5."). Against this backdrop, it is an uphill battle for Plaintiff to maintain that he had standing at the time he brought this suit, and it was only the change in New Jersey law that has now arguably mooted the case.

But, even if the Court were to treat the issue as one of mootness, rather than standing, Plaintiff's argument would still fail. Although Plaintiff briefly gestures at exceptions to the mootness doctrine, he makes no meaningful effort to show that any such exception is satisfied here. He offers no reason, for example, to conclude that this is a "controversy is capable of

---

[1] *Compare* N.J. Stat. Ann. § 2C:58-3(c)(5) (2021) ("(5) To any person where the issuance would not be in the interest of the public health, safety or welfare[.]") *with* N.J. Stat. Ann. § 2C:58-3(c)(5) (2023) ("(5) To any person where the issuance would not be in the interest of the public health, safety or welfare because the person is found to be lacking the essential character of temperament necessary to be entrusted with a firearm[.]").

repetition, yet evading review," *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974) (internal

quotation marks omitted), nor does he point to any, tangible collateral consequences that a

decision in this case would affect, *cf. Karaha Bodas Co. v. Perusahaan Pertambangan Minyak

Dan Gas Bumi Negara*, 335 F.3d 357, 365 (5th Cir. 2003).  Although the moving party bears the

initial burden of establishing that a dispute has become moot, the party invoking an exception to

the mootness doctrine—here, Plaintiff—bears the burden of showing that the exception applies.

*See Honeywell Int'l, Inc. v. NRC*, 628 F.3d 568, 576 (D.C. Cir. 2010).  Plaintiff has not come

close to carrying that burden.

Second, Plaintiff contends that New Jersey law does not, in fact, independently bar him

from possessing a firearm.  Dkt. 39 at 6.  The New Jersey Superior Court has resolved that

question and has held that Plaintiff is barred under New Jersey law, §§ 2C:58-3(c)(1) and 2C:58-

3(c)(5), from obtaining an NJFPIC or a permit to purchase a handgun.  Dkt. 42-1 at 2–3 (Joint

Status Report Ex. 1).  Plaintiff has declined to appeal that decision, Dkt. 43, and it is,

accordingly, binding and final.  This Court, of course, has no authority to alter a state court's

interpretation and application of state law, much less authority to set aside the decision of a state

court that independently bars Plaintiff from obtaining the NJFPIC that he concedes is a necessary

precondition of the relief that he seeks.

Third, Plaintiff argues that the government "misses the point of [his] claims and injury."

Dkt. 39 at 11.  As he sees it, "this case is not only about obtaining a NJFPIC in New Jersey so

[he] can exercise his Second Amendment rights, but [also] about stopping the [g]overnment's

mischaracterization of his federal rights when he attempts to lawfully possess, rent, or borrow a

firearm."  *Id.* at 12.  To the extent the Court understands this undeveloped argument, it

fundamentally misconceives the role of the federal judiciary.  "Article III of the Constitution

limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). That is why Plaintiff must demonstrate that he has standing. *Id.* A generalized grievance that is unmoored to any "concrete" and "redressable" harm does not present a "case" or "controversy" within the meaning of Article III, and the Court, accordingly, lacks "judicial power" to adjudicate such a claim. U.S. Const., Art. III, Section 2.

For all of these reasons, Plaintiff has failed to carry his burden of demonstrating that this Court has jurisdiction to enter a declaratory judgment or to grant any other remedy based on the ATF's alleged misreading of the business practices exception. *Cf. Miriyeva v. United States Citizenship & Immigr. Servs.*, 9 F.4th 935, 945 (D.C. Cir. 2021) ("[I]t is a 'well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction.'" (quoting *C&E Services, Inc. of Wash. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002))). The Court, accordingly, concludes that the government is entitled to summary judgment, and the Court will dismiss the action without prejudice for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court will **DENY** Plaintiff's Motion for Summary Judgment, will **GRANT** Defendants' Cross-Motion for Summary Judgment, and will **DISMISS** the case without prejudice.

A separate order will issue.

> /s/ Randolph D. Moss
> RANDOLPH D. MOSS
> United States District Judge

Date: September 30, 2023